UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JANE WRIGHT, Conservator for VERNON
CRINER,

                    Plaintiff,

vs.                              Case No.  2:10-cv-336-FtM-29DNF

JOSE   HERNANDEZ,   PRISON   HEALTH
SERVICES, and INDIANA CRUZ
                    Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court on Defendants Jose Hernandez, Indiana Cruz, M.D., and Prison Health Services, Inc.'s Motion for Summary Judgment (Doc. #106) filed on May 3, 2013. Plaintiff filed a Response to Defendants' Motion for Summary Judgment and Brief in Support (Doc. #110) on June 3, 2013. Defendants filed a Reply (Doc. #115) on June 20, 2013.

I.

Plaintiff Vernon Criner initiated this action on May 25, 2010, by filing a Complaint (Doc. #1) asserting claims under 42 U.S.C. § 1983.  Plaintiff is proceeding on his Fourth Amended Complaint (Doc. #102), filed March 4, 2013, against defendants Jose Hernandez and Indiana Cruz, M.D., in their individual capacities, alleging that they were deliberately indifferent to plaintiff's serious medical condition in violation of the Eighth Amendment. Specifically, plaintiff alleges that Hernandez and Dr. Cruz, having knowledge of his history of paroxysmal atrial fibrillation,

hypertension, and hyperlidemea, failed to respond to plaintiff's complaints and symptoms while he was incarcerated at the Collier County Jail. (Doc. #102, ¶¶ 5, 61, 78.)  As a result of their deliberate indifference, plaintiff alleges that his conditions caused him to fall in his jail cell, resulting in partial quadriplegia. (Id. at ¶¶ 47-51.)

In addition to his claims against Hernandez and Dr. Cruz, plaintiff alleges that Prison Health Services (PHS) had an unconstitutional custom or policy to withhold medical treatment from jail detainees such as plaintiff. (Id. at ¶ 85.)  Plaintiff also identified the following alternative customs or policies: (1) if PHS had a policy to provide medical treatment, PHS's failure and deliberate indifference to enforce the policy caused plaintiff's injury; (2) in the absence of a policy with regard to the medical treatment of detainees, PHS was deliberately indifferent in its failure to establish such a policy; and (3) PHS failed to supervise its staff in their treatment of jail detainees. (Id. at ¶¶ 88-93.)

Defendants argue that they are entitled to summary judgment because the evidence does not support plaintiff's constitutional claims against Hernandez and Dr. Cruz, and that plaintiff has failed to identify an official custom or policy that served as the moving force behind the alleged violation.  (Doc. #106.)

## II.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c).   "An issue of fact is 'genuine'' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."   Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010).   A fact is ""material" if it may affect the outcome of the suit under governing law.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact.   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).   To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial.   Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party.  Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).  However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment."  Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

## III.

The following facts are undisputed and taken in the light most favorable to the non-moving party, plaintiff:

On January 18, 2008, Vernon Criner (plaintiff) was incarcerated at the Collier County Jail following a conviction for driving under the influence.  Upon his arrival at the jail, an employee of PHS, the company responsible for the medical care of inmates at the Collier County Jail, inquired as to plaintiff's

current medical conditions and medications.  Plaintiff informed the staff member that he was suffering from a cardiac condition known as atrial fibrillation,[1] a common form of arrhythmia, he had a history of heart attack and stroke, and he was scheduled to have a pacemaker installed that day.  (Doc. #74, Exh. #5, pp. 13-14.) Prison records also indicate that plaintiff had been diagnosed with hypertension and was taking a number of medications to treat his conditions.  (Id.)  After receiving this information, a nurse verified plaintiff's medications by contacting his pharmacy in Michigan.

During his incarceration at the Collier County Jail, plaintiff submitted a myriad of sick call requests, the first being submitted on January 19, 2008.  Among his first requests, plaintiff indicated that he was experiencing shortness of breath and pains in his arms and chest.  (Doc. #74, Exh. #5.)  Following these requests, plaintiff visited the hypertension clinic at the jail on February 6, 2008, and was evaluated by defendant Jose Hernandez (Hernandez), a physician's assistant employed by PHS.  After learning of plaintiff's medical conditions, Hernandez decided to continue the treatment plaintiff was receiving prior to his incarceration with a management goal of controlling plaintiff's hypertension and atrial fibrillation, and prevention of complications.  (Doc. #110,

---

[1]Atrial fibrillation is condition where the upper chambers of the heart are beating rapidly and irregularly, generally causing an overall fast heart rate.  (Doc. #74, Exh. #12, p. 19.)

Exh. #2, p. 2.)   Defendant Indiana Cruz, M.D. (Dr. Cruz), signed off on the treatment plan and entered an order to obtain plaintiff's medical records. (Doc. #74, Exh. #3, p. 23.)

The medical records were received in late February and confirmed that plaintiff had been diagnosed with atrial fibrillation and stated that plaintiff was scheduled to begin anti-arrhythmic therapy with Betapace[2] on January 18, 2008.[3] (Doc. #110, Exh. 1, p. 4.)  The medical records, however, made no mention of plaintiff's alleged need for a pacemaker, nor did they confirm his history of heart attack and stroke.

Over the next couple of months, plaintiff submitted sick call requests complaining of chest pain, shortness of breath, and atrial fibrillation.   The nursing staff responded to most of these requests, but plaintiff was also evaluated by Hernandez during this period.  No changes in plaintiff's treatment plan were made. (Doc. #74, Exh. #1, pp. 8-13.)   In early May, plaintiff made numerous complaints of severe dizziness, fainting, and a metallic taste in his mouth.  In response to these complaints, plaintiff was seen by

_____

[2]Betapace is an antiarrhythmic agent used to prevent atrial fibrillation. (Doc. #111, p. 5.)  Because of its potentially life threatening side effects, the drug must be administered in an impatient setting lasting for two to three days. (Doc. #110, Exh. #1, p. 4.)

[3]Although plaintiff was ultimately scheduled to begin the Betapace trial on January 18, 2008, the record indicates that he cancelled two prior appointments for the treatment. (Doc. #110, Exh. #1, pp. 4, 7.)

Hernandez on May 8, 2008, and stated that he was "feeling fine." (Doc. #74, Exh. #1, p. 14.)  Hernandez evaluated plaintiff's condition and determined that he was experiencing bradycardia, which is a slow resting heart rate.  Consequently, Hernandez lowered the dose of plaintiff's hypertension medication because it causes the heart rate to slow.  Hernandez also ordered laboratory tests, an EKG, and a follow-up appointment for the next day.  (Id.) The follow-up did not occur until May 12, 2008.  At that time, plaintiff informed Hernandez that he felt okay and was not having any chest pains or shortness of breath, but occasionally suffered from dizziness.  The lab results revealed that plaintiff was suffering from mild to moderate renal failure.  Consequently, plaintiff was ordered to stay in the infirmary for further observation.  The following day, Dr. William Schmith, a physician at the jail, noted that plaintiff complained of a headache and had a droopy face, and subsequently referred him to the Naples Community Hospital for further evaluation and treatment.  The referral stated that plaintiff had a low heart rate and questioned the need of a pacemaker to treat plaintiff's condition. (Doc. #74, Ex. #6, p. 19.)  Plaintiff was evaluated in the emergency room and diagnosed with postural hypotension (low blood pressure related to standing up) secondary to dehydration and well controlled cardiac arrhythmia.  The emergency room medical staff did not indicate that plaintiff needed a pacemaker or a referral to cardiologist.

-7-

Following his return to the jail, plaintiff remained in the infirmary until May 26, 2008, for further monitoring.  During this period, there were no major complications, but plaintiff did complain of nose and gum bleeding.  (Doc. #74, Exh. #1, p. 23.) Hernandez evaluated these conditions, but called Dr. Kennedy, another physician at the jail, to discuss these conditions before altering plaintiff's treatment.  (Id.)  On May 28, 2008, plaintiff submitted a couple sick call requests stating that he was dizzy and that his right leg was extremely swollen and hurt to walk on.  He was seen the following day by Hernandez, who ordered plaintiff to take the medication Lasix, a diuretic, to address the swelling. (Id. at p. 31.)  Plaintiff returned to the care of Hernandez on June 2, 2008, following complaints of dizziness and an increased heart rate.  At this appointment, plaintiff informed Hernandez that he was "feeling much, much better" and Hernandez noted that swelling in his legs had greatly decreased.  (Id. at p. 32.) Hernandez did not alter plaintiff's treatment plan, but did order his blood pressure and pulse be monitored over the next five days. (Id.)  Over the next six days, plaintiff submitted sick call requests noting that he was suffering from atrial fibrillation, dizziness, and stated that he had been falling.  Nurses responded to most of the requests, but plaintiff was also evaluated by Hernandez on July 9, 2008.  The notes from this visit state that plaintiff's hypertension was under control, Lasix was to be

continued to address the swelling in plaintiff's lower extremities, and that plaintiff was to be referred to a nephrologist (a kidney specialist) because an ultrasound of plaintiff's kidneys had been abnormal. (Id. at p. 33.)

Prior to his appointment with the nephrologist, the medical staff, including Hernandez, responded to plaintiff's sick call requests, but no significant changes were made to his treatment plan. On June 23, 2008, plaintiff was evaluated by Dr. Joji Urlanda, a nephrologist, who determined that the continuation of Lasix was the appropriate form of treatment. (Doc. # 74, Exh. #17, p. 9.) Shortly after plaintiff returned to the jail, deputies were notified that plaintiff was in need of medical attention. The medical staff was informed by plaintiff that he became dizzy after standing up and fell, hitting his head on the wall and floor. The staff also noted that he was semi-responsive and was unable to feel his arms or legs. (Doc. #74, Exh. #1, p. 38.) An ambulance was subsequently summoned by the medical staff to transport plaintiff to the Naples Community Hospital.

Emergency room personnel determined that plaintiff had a compressed spinal cord and immediately performed a laminectomy. Plaintiff remained at the hospital for further monitoring, during which time he was no longer receiving his medication. Hospital personnel noted that plaintiff had both low blood pressure and a slow heart rate. Plaintiff was diagnosed with sick sinus syndrome

on July 7, 2008, and it was determined that he was in need of a pacemaker.  A pacemaker was implanted on July 10, 2008.  (Doc. #110, Exh. #6, p. 6.)

## IV.

In order to establish liability under 42 U.S.C. § 1983, the plaintiff must prove that the defendants deprived him of a right secured under the United States Constitution or federal law and that such deprivation occurred under the color of state law.  U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). Plaintiff's constitutional claims concerning his medical treatment invokes the protections of the Eighth Amendment.  Thomas v. Bryant, 614 F.3d 1288, 1303 (11th Cir. 2010) (citations omitted).  To prevail on a claim of deliberate indifference to a serious medical need, plaintiff must show: (1) an objectively serious medical need; (2) defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).

### 1. Objectively Serious Medical Need

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Hudson

v. McMillian, 503 U.S. 1, 9 (1992).  A serious medical need is "one
that has been diagnosed by a physician as mandating treatment or
one that is so obvious that even a lay person would easily
recognize the necessity for a doctor's attention."  Hill, 40 F.3d
at 1187.  Generally, serious medical needs are those "requiring
immediate medical attention."  Youmans v. Gagnon, 626 F.3d 557, 564
(11th Cir. 2010) (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40
F.3d 1176, 1187 (11th Cir. 1994)).  Furthermore, "[t]he medical
need must be one that, if left unattended, pos[es] a substantial
risk of serious harm."  Farrow v. West, 320 F.3d 1235, 1243 (11th
Cir. 2003) (citing Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir.
2000)).

In plaintiff's response to defendants' motion for summary
judgment, he identifies the serious medical condition that caused
his injury as sick sinus syndrome, and has provided expert opinion
stating that it was the cause of his injury.  (Doc. #110, p. 19.)
Although this condition may have caused his injury, it was not
diagnosed until after the injury occurred.  Therefore, it cannot
qualify a serious medical need that has been diagnosed by a
physician as mandating treatment.

Plaintiff attempts to overcome this hurdle by arguing that a
lay person could easily recognize his need for medical attention.
(Doc. #110, p. 19.)  The evidence in the record shows that
plaintiff made numerous complaints of dizziness, shortness of

breath, chest pains, and falling while in custody at the Collier County Jail.  Dr. James Schafer's entry into plaintiff's medical records on December 12, 2007, states that plaintiff was informed of the importance of seeking emergency medical care if he experiences intense or prolonged chest pain.  (Doc. #110, Exh. #1, p. 4.) These complaints, in conjunction with plaintiff's known cardiac condition, is sufficient to raise a genuine issue of material fact as to the existence of a serious medical need.  A reasonable trier of fact could find that a lay person could easily recognize the need for medical attention and the substantial risk of serious harm if the condition is not treated.  Accordingly, plaintiff has pointed to sufficient evidence to survive summary judgment as to this issue.

## 2.  Deliberate Indifference

In addition to establishing an objectively serious medical need, the plaintiff must establish that a defendant acted with "deliberate indifference" by showing a: (1) subjective knowledge of a risk of serious harm (*i.e.,* both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); (2) disregard of that risk; and (3) conduct that is more than gross negligence. Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005).  Deliberate indifference may be established by a showing of grossly inadequate care, by a decision to take an easier but less efficacious course

of treatment, or by proving that the medical care provided for an obvious condition is so cursory as to amount to no treatment at all.  See Steele v. Shah, 87 F.3d 1266, 1269-70 (11th Cir. 1996); Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989); Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989); Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985).  "When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'"  Blanchard v. White Co. Pet. Ctr. Staff, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991))).  Where it is shown that an inmate has received significant medical attention and has not been ignored, federal courts are reluctant to second guess the medical judgments of those providing care.  Hamm, 774 F.2d at 1575.  Consequently, "[d]eliberate indifference is not established where an inmate received care but desired different modes of treatment."  Id.

Plaintiff claims that Hernandez and Dr. Cruz were aware of his serious medical condition, but "turned a cold shoulder to his very real, very legitimate complaints and requests for a medical or cardiology referral." (Doc. #110, p. 22.)  The evidence, however, establishes that plaintiff received a significant amount of medical care, including treatment for his cardiac conditions.

During the period between plaintiff's arrival at the Collier County Jail on January 18, 2008, and his injury on June 23, 2008, plaintiff visited Hernandez and Dr. Cruz for medical care on more than fifty different occasions.  After learning of plaintiff's medical conditions, Hernandez and Dr. Cruz continued the treatment prescribed by plaintiff's cardiologist prior to his incarceration and addressed many of plaintiff's complaints.  In early May, plaintiff was diagnosed with a slow heart rate following complaints of severe dizziness and fainting.  Hernandez responded to these complaints by adjusting plaintiff's medications and by ordering blood tests and an EKG.  Based on the test results, plaintiff was transferred to the infirmary for further monitoring and when his condition began to worsen, he was immediately sent to the emergency room.  The hospital records stated that plaintiff's atrial fibrillation was well controlled and made no mention of the need for a pacemaker or a follow-up appointment with a cardiologist. Plaintiff's medical needs were also addressed following his complaints dizziness, increased heart rate, and swollen legs in early June.  Hernandez ordered that plaintiff's blood pressure and heart rate be monitored and ultimately referred him to a kidney specialist to address the abnormal results of an ultrasound performed on his kidneys.

Even when viewing the facts in a light most favorable to plaintiff, the undisputed evidence shows that plaintiff received a

significant amount of medical care during his incarceration at the Collier County Jail.   Despite this significant amount of care, plaintiff second guesses the medical judgments of those providing care.   See Hamm, 774 F.2d at 1575.   Plaintiff submitted an expert disclosure from Dr. Joe Goldenson, who opined that Hernandez and Dr. Cruz did not adequately evaluate plaintiff's symptoms and should have sent him to a cardiologist for further evaluation. (Doc. #111, Exh. #2, p. 14.)   However, evidence of potential error in the medical judgment of Hernandez or Dr. Cruz does not create a genuine issue of material fact because it does not demonstrate action or inaction beyond gross negligence.   See Fischer v. Fed. Bureau of Prisons, 349 F. App'x 372, 375 (11th Cir. 2009).   As a result, this Court finds that summary judgment on behalf of Hernandez and Dr. Cruz is appropriate.

**V.**

PHS contends that summary judgment should be granted in its favor because plaintiff has failed to identify an official policy or custom behind the alleged violation of his constitutional rights.   (Doc. #106, p. 11.)   In response, plaintiff argues that Hernandez and Dr. Cruz's implemented a policy attributable to the county when they allegedly refused to provide medical care based on its cost.   (Doc. #110, p. 24.)

-15-

A plaintiff seeking to impose liability on a municipality[4] under § 1983 must identify a municipal "policy" or "custom" that was the "moving force" behind the constitutional deprivation. Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-94 (1978)). The government entity "must be found to have *itself* caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory." Skop v. City of Atlanta, 485 F.3d 1130, 1145 (11th Cir. 2007) (emphasis in original) (citing Monell, 436 U.S. at 694-95). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the [entity]. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005) (quoting Sewell, 117 F.3d at 489). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability" against a municipality. Oklahoma City v. Tuttle, 471 U.S. 808, 823-824 (1985); see also Craig v. Floyd Cnty., 643 F.3d 1306, 1310-11 (11th Cir. 2011).

The Court has determined that plaintiff's constitutional

---

[4]Because the provision of medical services to inmates is a function traditionally within the exclusive prerogative of the state, a private entity that contracts to provide these services, such as PHS, becomes the functional equivalent of a municipality under § 1983. Craig, 643 F.3d at 1310 (citing Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997)).

rights were not violated.  Therefore, there is no need to consider policy or custom.  Rooney v. Watson, 101 F.3d 1378, 1381-82 (11th Cir. 1996).

Alternatively, to survive PHS's motion for summary judgment, plaintiff must point to a custom or policy that caused his alleged constitutional violation.  Plaintiff's only argument in support of his claim against PHS is that Hernandez and Dr. Cruz created an official policy when they refused to provide the required care.  In support of this argument, plaintiff submitted an affidavit stating that Hernandez told him that the jail would not pay for his requested treatment.  (Doc. #112, Exh. #2, p. 3.)  The record, however, is void of any evidence indicating that Hernandez or Dr. Cruz had policy making authority or refused to provide treatment to any other inmates.  Accordingly, plaintiff has failed to demonstrate a "persistent and wide-spread practice" sufficient to demonstrate a policy or custom.  See McDowell v. Brown, 392 F.3d 1283, 1290.

The alternative customs and policies identified in the Fourth Amended Complaint are based on the failure to enforce a policy, the failure to create a policy, and the failure to supervise the staff at the jail.  To prevail on any of these alternatives, plaintiff must show that the defendant knew of the need to take action and that it made a deliberate choice not to take any action.  Gold v. City of Miami, 151 F.3d 1346, 1351 (11th Cir. 1998).  Plaintiff has

not presented any evidence showing that PHS knew of the need to take action or that it deliberately chose not to.  Therefore, PHS's motion for summary judgment is granted.

Accordingly, it is now

**ORDERED:**

1.  Defendants Jose Hernandez, Indiana Cruz, M.D., and Prison Health Services, Inc.'s Motion for Summary Judgment (Doc. #106) is **GRANTED**.

2.  The Clerk is directed to enter judgment accordingly, terminate all pending motions and deadlines, including the Final Pretrial Conference scheduled for Monday, September 16, 2013, and to close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___12th___ day of September, 2013.

_____

JOHN E. STEELE
United States District Judge

Copies:

Counsel of record